# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

DOROTHY R. MOYER,

      Plaintiff,

    v.                              No. 2:13-CV-00164 WPL/SMV

THE VILLAGE OF FORT SUMNER,
NEW MEXICO, a municipality
Existing under the laws of the
State of New Mexico, and WINDELL
BRIDGES, individually,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' COMBINED MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS IN COUNTS IV, V, VI, VII AND VIII
### and
## DEFERRING RULING ON DEFENDANTS' MOTION TO DISMISS ON PLAINTIFF'S CLAIM FOR EQUAL PROTECTION IN COUNT III.

THIS MATTER comes before the Court upon Defendants' Combined Motion to Dismiss and for Summary Judgment on Plaintiff's Equal Protection Whistleblower Protection Act, Assault, Battery, Intentional Infliction of Emotional Distress and Prima Facie Tort Claims, filed March 21, 2013 (**Doc. 8**). Having reviewed the parties' briefs and applicable law, I find that Defendants' motion is well-taken and shall be GRANTED with regard to Plaintiff's claims under New Mexico anti-retaliation statute, NMSA 1978 10-16-1 (Count IV) and Plaintiff's claims of assault, battery, intentional infliction of emotional distress and prima facie tort (Counts IV through VIII); and that the Court's ruling on Plaintiff's claim of equal protection (Count III) is DEFERRED until the complaint is amended as to that count.

## BACKGROUND

Plaintiff was employed with the Village of Fort Sumner ("Ft. Sumner") as Airport Manager from September 2005 until May 10, 2011, when she was terminated following a pre-termination hearing. Many of Plaintiff's claims in this lawsuit are directed against Defendant Windell Bridges, who was acting Mayor of the Village of Ft. Sumner during the relevant time.

Plaintiff's job duties as Airport Manager included being on-call to take care of problems that might arise at the airport. She lived next door to the airport and, according to the complaint, "was expected to be on the airport premises almost immediately for any and all after hour's issues." Compl., § 8. In Count I, Plaintiff alleges that Defendants did not give her overtime pay she was entitled to under the Fair Labor Standards Act ("FLSA") as a non-exempt employee.[1] Plaintiff also asserts claims of breach of contract; Equal Protection; the Whistleblower Protection Act (NMSA 1978 § 10-16C-1); Assault and Battery, Intentional Infliction of Emotional Distress; and Prima Facie Tort (Counts 2-8, respectively).

## I.      Legal Standards

Defendants' motion is presented as a motion to dismiss *and* motion for summary judgment. On a Rule 12(b)(6) motion, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b); *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210 (10th Cir. 2007). In general, a motion to dismiss "should be converted to

---

[1] Under the FLSA, 29 U.S.C. § 201 *et seq.*, an employer may not employ a person for more than 40 hours per workweek unless the employee receives overtime compensation of at least one- and-a-half times the regular hourly rate for hours exceeding 40. *Id.* at § 207(a)(2)(c). The FLSA creates an exemption to its overtime requirement, however, for people "employed in a bona fide executive, administrative, or professional capacity." *Id.* at § 213(a)(1).

a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings." *Id.*   Thus, the Court considers Defendants' motion as a motion for summary judgment.  Given that Plaintiff's response includes exhibits, there is no need for notice to Plaintiff of the Court's intention to convert the motion to a Rule 56 motion.  *See Alexander v. Oklahoma,* 382 F.3d 1206, 1214 (10th Cir. 2004) (Constructive notice or a non-movant's reliance upon evidentiary materials in response to a motion to dismiss may obviate the need for formal notice by the court of conversion.).

Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Where the nonmoving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment.  *Ford v. West,* 222 F.3d 767, 774 (10th Cir. 2000) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

While the Court considers material outside the complaint, the Court's analysis of those claims does not depend on that material because the claims cannot pass the threshold level under Fed.R.Civ.P. 12(b)(6).   A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.*; *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("The [Supreme]

Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss.") (quoting *Twombly*, 550 U.S. at 570).

## II.      Parties' Positions

The facts presented by Defendants are largely undisputed.  However, these facts focus almost exclusively on the legal process concerning Plaintiff's termination hearing, the appeal from the termination and the subsequent appeal to state court, whereas Plaintiff's claims in the complaint concern events leading up to the hearings and appeals.  The Court assumes that Defendants rely on the findings contained within the attached exhibits to argue the merits of Plaintiff's claims in this lawsuit because the claims are purportedly identical to those that were heard previously at her termination hearing and considered on appeal.   Nevertheless, this is an odd way to proceed, since presenting facts related to events that occurred *after* the allegations in the complaint affords Plaintiff little opportunity or reason to present factual evidence which is relevant to her claims and which can challenge Defendants' position on those claims.

Defendants' strategy, however, will have little impact on the Court's rulings on this motion.  Despite the parties' implicit stipulation to convert the instant motion to a summary judgment motion, most of the Court's rulings herein will turn on purely legal issues.   For context, the Court refers to information contained in the exhibits attached to Defendants' motion (namely, Exhibits A & C, which are findings in the Village Council's Final Decision regarding Plaintiff's termination, and the appeal decision dated January 8, 2013, by Judge Albert Mitchell, Jr. of the Tenth Judicial District Court pursuant to review under 1-75 NMRA).  These exhibits are useful in gaining a perspective on the parties' positions and to obtain some idea of the chronology of events.

Plaintiff depicts her job position as Airport Manager as demanding and time-consuming, to the point where her job precluded her from engaging in leisurely or social activities or from visiting out-of-town family and friends. She claims that Defendants failed to compensate her for all on-duty hours worked in excess of forty hours per week, but does not specify any time period during the six years she worked for Defendants for which she claims she is owed compensation. In addition to being denied overtime pay, Plaintiff alleges that the Mayor of Ft. Sumner assaulted and battered her on March 31, 2011, when he slammed a copy machine cover on Plaintiff's arm and hand when she had her hand on the copier glass; and that she was terminated in retaliation for her filing a police report regarding the Mayor's assault and battery on her and for her requesting an investigation of his "harassment" of her. Plaintiff's other claims brought under the New Mexico Tort Claims Act flow from that incident. Plaintiff also alleges a violation of the New Mexico "Whistleblower Protection Act," NMSA 1978, § 10-16 C-1, in that she suffered retaliation for making certain complaints to Mayor Bridges.

Defendants' position is that Plaintiff exhibited a combative attitude in being assigned any new job duties or responsibilities, and that her termination was a direct result of her misconduct and insubordination. The Village Council appeared to view Plaintiff's job as considerably less onerous than Plaintiff alleges, with job duties being very light during at least half of the year. Air traffic at the Village Airport is very light, with approximately one plane a month arriving at the airport. In the spring and fall, NASA uses the Village Airport to launch high altitude and experimental balloons, and the Airport Manager is required to assist NASA full-time during balloon launch campaigns. As Airport Manager, Plaintiff was required to mop the NASA building floors in several locations and did so regularly for six years. Plaintiff's daily

activities consisted of mowing, weed-spraying and basic maintenance of the Airport runways, with little administrative work.   Ex. A at 2.

The trouble seemed to start after Mr. Bridges was appointed Mayor of the Village of Ft. Sumner in July of 2010.   At that time, Plaintiff was made aware that Mayor Bridges was her direct supervisor/employer.   Mayor Bridges proved to be a "hands-on" village official, making it his policy to attempt to learn the responsibilities of each Village department to better understand the duties of the various departments.   As part of an effort to cross-train employees in order to deliver Village services with fewer employees, Bridges asked Plaintiff to provide a list of her current duties and was subsequently asked to participate in other job duties as needed.

A.     Television Incident

Several incidents involving Plaintiff's job duties and Defendant Bridges occurred during the time leading up to her termination.   One incident concerned the television in the NASA airport facility.   On one of the Mayor's visits to the facility in September 2010, he found the television on, and asked Plaintiff to turn it off.   When he found the television on again during a second visit to the facility, he warned Plaintiff that disciplinary action would be taken if he entered the NASA facility again and found it turned on.   In January, 2011, Bridges went to the NASA facility building and again observed the television on.   He told Plaintiff to turn it off, and issued a written reprimand for failing to follow the lawful order of a recognized superior. Plaintiff subsequently advised Bridges that another employee was responsible for turning the television on.   Bridges agreed to investigate, and when the other employee admitted to turning the television on rather than Plaintiff, Bridges removed the written reprimand from Plaintiff's personnel file.   Ex. A, ¶¶ 17, 22.

B.     Mowing Duties

At some point in her employment, Plaintiff had been given a doctor's work limitation because of her pregnancy which provided that she avoid exposure to herbs and weeding but did not specifically preclude her from mowing.  At the time of her hearing, Plaintiff argued that Bridges improperly required her to continue mowing, even though she claimed she was physically incapable of doing so because of her pregnancy.[2]  Bridges denied telling Plaintiff she was required to mow at any time and that he had made another city employee, Harold Gonzales, available to assist her where needed.   Bridges testified at the hearing that Plaintiff had been "combative or argumentative" when she spoke to the Mayor about mowing.  The Village Council noted that no verbal warning, reprimand or other disciplinary action was taken against Plaintiff for failing to mow.   Ex. A, ¶¶ 10-14.

C.    Animal Control Duties

In January, 2011, instead of filling a vacancy in the animal control position, Bridges intended to use employees from the Streets & Park Crew.   At Bridges' request that Plaintiff assist the crew with the animal control duties, Plaintiff became "argumentative and combative." Ex. A, ¶ 18.   As a result of her complaints, however, Plaintiff was not required to perform any animal control function for the Village.  She was not written up or otherwise disciplined for refusing to help with the animal control duties.  Ex. C, ¶ 7.[3]

D.    Mopping Duties

Plaintiff's mopping duties at the Village Community House ("Community Center") triggered the events which led to Plaintiff's termination.  Sometime before March 8, 2011, the

---

[2]  The mowing was done on a riding mower.  Ex. A, ¶ 11.

[3]  In his decision on Plaintiff's appeal of the Village Council decision, Judge Mitchell relied in part on the fact that Plaintiff was not disciplined for her refusal to help in the animal control duties in finding that Bridges was not "lying in wait" nor "setting her up," as Plaintiff had contended.  Ex. C , ¶¶ 6-8.

Mayor received complaints that the Community Center building was not being properly maintained.  Bridges assigned three employees from the Street Department, three members from the Waste-Water Department and Plaintiff to assist with the upkeep and janitorial duties at the Community House.  Several weeks later, Bridges received complaints from members of the Zumba class, through the Village Clerk (Ron Sena) that excess water was being left on the Community House floor as a result of excessive wet-mopping.   Bridges went to the facility and observed large amounts of water having been left on the floor.  Plaintiff had been mopping the floors at the NASA facility for the past six years, and so Bridges interpreted her actions as an expression of the combative attitude he had seen previously when she was assigned any new job duty or responsibility.[4]  On March 24, 2011, Bridges had photographs taken of the excessively wet floor, which were identified as such at Plaintiff's appeal.   Ex. A, ¶¶ 25-30.

E.     March 30, 2011 Meeting

        On March 30, 2011, Bridges determined that Plaintiff should be given a written reprimand for what he considered to be her deliberate conduct, including her attitude upon being assigned any new job duties or responsibilities.   However, according to the evidence submitted by Defendants, Plaintiff was terminated not because of the excessive wet-mopping, but as a result of her negative conduct and insubordination toward the Mayor at the March 31st meeting.

        At the meeting, Plaintiff was presented with a written reprimand for her excessive wet mopping and was asked to sign the document, but she refused.  Bridges and Village Clerk Sena noted in writing that Plaintiff refused to sign the reprimand.  According to the Village Council description of events, after refusing to sign, Plaintiff became agitated and angry, and indicated that she was going to leave the meeting.  Bridges advised her that she was required to wait until

---

[4]  There is no information in the pleadings or exhibits regarding how it was ascertained that it the "excessive wet-mopping" was done by Plaintiff, but the accuracy of that fact is not relevant to the Court's analysis here.

he could provide her with a copy of the reprimand as required by the employee handbook, and that leaving without permission would be grounds for immediate termination.

Bridges tried to make a copy of the written reprimand at the copy machine located in the NASA building, but Plaintiff prevented him from doing so, crossing the room in an angry manner and telling him he was not allowed to use the copy machine without permission.   When Bridges again attempted to make a copy of the paper, Plaintiff took the written reprimand from Bridges and took it to an adjoining room and placed it on a box.   Bridges retrieved the paper, returned to the copy machine to copy it, at which point Plaintiff unplugged the copy machine from the wall so that Defendant could not use it.  Ex. A, ¶¶ 35-38.   This incident appears to be the basis for the allegations in the complaint for assault and battery and other tort law claims, in which Plaintiff asserts that she tried to prevent Bridges from using NASA equipment for Village purposes.  Comp., ¶ 39.  However, Defendants afford quite a different perspective on the incident.

F.      Plaintiff's Termination

As a result of her conduct at the March 30, 2011 meeting, Plaintiff received notice that she was being considered for involuntary termination from her employment with the Village. Ex. A, ¶ 41.   On April 13, Plaintiff at tended a pre-termination hearing with her attorney, at which time recommendation of her termination was sustained and Plaintiff was terminated.  Ex. A, ¶ 42.   Plaintiff appealed her termination to the Village Council and received a hearing on May 10, 2011. Ex. A, ¶ 44; Ex. B (Appeal Tr.).   Plaintiff was also represented by her attorney at that hearing.  She was permitted to call witnesses, engage in reasonable cross-examination, and submit documentary evidence.  Plaintiff provided testimony in the hearing, and had the opportunity to cross-examine Defendant Bridges.  Part of this cross-examination related to

Plaintiff's contention that disciplinary action was taken against her in retaliation for complaints she made against him earlier.  Plaintiff's husband also testified at the hearing.   The Village Council unanimously found Plaintiff's termination supported by just cause.  Ex. A (Village Council Final Decision) at 2-10; Ex. C, ¶ 18.

Plaintiff sought review of the Village Council Final Decision in New Mexico state court pursuant to NMRA 1-074 and/or 1-075.   On January 8, 2013, Judge Mitchell issued a ruling on Plaintiff's appeal, and found that (1) the Village Council did not act fraudulently, arbitrarily or capriciously, (2) the Village Council's decision was supported by substantial evidence; (3) the Village Council's decision was justified; (4) the Village Council's action was not outside the scope of its authority; and (5) the Village Council's action was otherwise in accordance with law. See Judge Albert J. Mitchell, Jr.'s Decision, Ex. C.

In concluding that the Village Council's decision based on that meeting was not fraudulent, arbitrary or capricious, Judge Mitchell found that:

> Ms. Moyer was an argumentative and difficult employee.  Because she had very few duties and obligations during roughly half of the year when balloons were not being launched, and had been able to maintain her employment since September of 2005 with minimal job duties during that time, she may have had the unreasonable belief that as a public employee she would not be required to assist with other departments.  However, the expectation of the mayor that she help was reasonable.

Ex. C, ¶ 8.


Although not mentioned in the complaint, Plaintiff had filed a complaint of sexual harassment hostile work environment against Defendant Bridges on February 1, 2011.  Ex. A, ¶¶

10

23-24.[5]   However, in his decision, Judge Mitchell explicitly rejected Plaintiff's retaliation theory based on Plaintiff's filing of that complaint.

G.   Plaintiff's Additional Facts

Plaintiff disputes Defendants' Facts Nos. 1-3 by noting certain procedural defects in the hearing, even though she alleges no due process claims in her complaint.  For example, in response to Defendants' statement of fact that Plaintiff appealed her termination on May 10, 2011, Plaintiff raises her issues with having Village Clerk Ron Sena participate in the Village Council hearing on her termination.   She had requested that Sena excuse himself from the appeal of her termination because he had previously made improper sexual advances towards her and because she had "continuous problems" with Mr. Sena parking at her home and "attempting to spy on her while she sunbathed in the back yard of her home."  Resp. at 5.   However, statements of this kind are not responsive to the facts set out by Defendants.  The Court also notes that Judge Albert Mitchell, the state court judge presiding over Plaintiff's appeal from her termination by the Village Council, shared in the view that the issue regarding Mr. Sena was "a red herring."  Judge Mitchell found that Mr. Sena's participation in either the pre- or post-termination hearing was "immaterial," since the other commissioners were unanimous in voting to terminate Plaintiff's employment.  Ex. C, ¶ 18.

Plaintiff also attempts to "dispute" Defendant's Fact No. 3, which states that Plaintiff was represented by her attorney at her hearing, by relying on one of her affidavit statements that Mayor Bridges was "coached" in answering questions at her pre-termination hearing.  Ex 1, ¶ 10 (Pltff's Aff.).   She also states in her affidavit that she was "not allowed to subpoena witnesses,

---

[5]  In the complaint, Plaintiff asserts only that she was "terminated from here employment . . . in retaliation for requesting an investigation of his harassment of Plaintiff."  Compl., ¶ 17.  In her response to Defendants' motion (Ex. 1, ¶ 1), Plaintiff refers to a complaint filed with the EEOC against Bridges in January, 2011, but it is not clear if this is a reference to the same complaint lodged against Bridges, or an additional one.

compel the production of documents, take depositions, [or] otherwise engage in "discovery. . . ."

Ex. 1, ¶ 11.   However, she does not dispute Defendants' Facts Nos. 5 and 7 which state that

Plaintiff was permitted to call witnesses, engage in reasonable cross-examination (including

cross-examination of Mayor Bridges) and submit documentary evidence.  Thus, the Court finds

that Plaintiff has not sufficiently created a factual dispute with regard to the undisputed facts set

out by Defendants because none of this "evidence" is material to any of the claims asserted in

her complaint.

Plaintiff presents several Additional Material Facts A-D wherein Plaintiff states that she

complained on a repeated basis to Village Clerk Sena and to Mayor Bridges that she was not

being paid over-time for "on call-time" despite the fact that members of the water department

received overtime for on-call time.   While this statement does not necessarily create a dispute

regarding the facts set forth by Defendants, the Court will not reject Plaintiff's fact as irrelevant

or immaterial because it goes directly to the fulcrum issue in this lawsuit—the overtime issue.

While Defendants' statement of undisputed facts did not cover the merits of the overtime issue,

the Court will not preclude Plaintiff from weighing in on the matter.

In Additional Fact D, Plaintiff also mentions shortcomings in her termination process,

such as failing to conduct mandatory arbitration and not being allowed to engage in full-blown

discovery.  In her complaint, Plaintiff does not allege due process claims or claims which

otherwise touch on the integrity of the procedures used in connection with her termination, and

the Court will not infer the existence of claims that are not alleged by Plaintiff.

## DISCUSSION

As a threshold issue in this discussion, Defendants urge the Court to dismiss several of

Plaintiff's claims which were not addressed in the response; and Plaintiff seeks a denial of

Defendants' motion because Defendants failed to comply with the requirements of D.N.M.LR-Civ. 54.1 and D.N.M. LR-Civ. 7 when they failed to seek Plaintiff's concurrence on their motion.  Both parties have committed procedural oversights.  Plaintiff's reliance on the local rules requiring concurrence is not consistent with Plaintiff's choice to respond to some but not all of Defendants' arguments.  Thus, the Court will take into consideration that Plaintiff has not responded to certain arguments raised by Defendants.  In turn, because Plaintiff has responded to most of the issues presented by Defendants, the Court will not summarily deny Defendants' motion, but will consider the motion on its merits.

Defendants move to dismiss all of Plaintiff's claims except for the FLSA claim in Count I and the Breach of Contract Claim in Count II.

## I.    Equal Protection Claim (Count III)

Plaintiff asserts that Defendants violated her equal protection rights by refusing to pay her overtime in accordance with federal law.   The Equal Protection Clause of the Fourteenth Amendment provides that no State shall deny to any person within its jurisdiction the equal protection of the laws.  It is triggered when the government treats someone differently than another who is similarly situated.  *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth*., 933 F.2d 853, 859 (10th Cir.1991).   Equal protection claims can be based upon a suspect classification or a fundamental right.  *Price-Cornelison v. Brooks,* 524 F.3d 1103, 1109 (10th Cir. 2008).

In her complaint, Plaintiff does not claim to be part of a suspect class that was categorically discriminated against.  The Court is not aware of case law which states that individuals who are not paid overtime constitute a "class" for equal protection purposes.  Nor is overtime compensation considered a fundamental right.  The only other recourse under the Equal

Protection clause would be a "class of one" theory, in which a plaintiff must allege that similarly situated persons were treated differently than herself, without a rational basis for doing so. *Jicarilla Apache Nation v. Rio Arriba County,* 440 F.3d 1202, 1212 (10th Cir. 2006).  However, Plaintiff is precluded from alleging such a claim, since the Equal Protection clause has been held not to apply to a public employee asserting a violation of the Clause under a "class of one" theory.  *Kelley v. City of Albuquerque*, 542 F.3d 802, 822 (10th Cir. 2008) (reversing district court's ruling that equal protection claims apply to public employment context).

Apparently having second thoughts on how the complaint was drafted, Plaintiff states in her response that she was the sole female employee at the airport, and that male employees of the water department were paid overtime while she was not.   Defendants consider this a new theory of relief, and the Court agrees.  Plaintiff's assertions in the complaint gave no indication whatsoever of the theory under which she raised her equal protection claim, and she certainly made no mention of gender, as she now has decided to do in her response.   For this reason, the Court defers ruling on whether this claim should be dismissed pending Plaintiff's amending the complaint to clarify the basis for her equal protection claim.  The Court allows Plaintiff to amend the complaint on this one issue.  Should Plaintiff wish to amend other aspects of the complaint, Plaintiff is required to seek permission of the Court and follow the federal and local rules of procedure in doing so.[6]

## II.    Violation of Whistleblower Protection Act (Count IV)

In Count IV of the complaint Plaintiff asserts a violation of New Mexico's anti-retaliation statute, NMSA 1978 §10-16C-1 et al. ("Whistleblower Protection Act" or "WPA"), which

---

[6]   In other words, Plaintiff need not seek the Court's permission to amend the complaint regarding the equal protection claim.  In order to amend the complaint for any other reason, Plaintiff must follow federal and local procedural rules in making a formal request to amend the complaint, in order to allow Defendant to respond.  In the event Plaintiff files an amended complaint containing more than amendments to Count III, and does so without the formal permission of the Court, that pleading will be stricken.

prohibits an employer from taking any retaliatory action against a public employee because the employee "communicates to the public employer or a third party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act."  §10-16C-3.   Defendants contend that this claim should be dismissed because it is not part of the same "case or controversy" under Article III which would allow the Court to exercise jurisdiction over these claims pursuant to 28 U.S.C. § 1367.   Defendants also contend that the doctrine of collateral estoppel bars this claim because Judge Mitchell's January 8, 2013 ruling on Plaintiff's appeal from her termination already decided the same issues.

A.    Supplemental Jurisdiction Under 28 U.S.C. §1367

Under 28 U.S.C. §1367, in order for a district court to have supplemental jurisdiction over state law claims, original jurisdiction must exist and the other claims must be "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III . . . ."   § 1367(a).   The Tenth Circuit has recognized that § 1367(a) codified the common nucleus of operative fact test.  *See Shaw v. AAA Eng'g & Drafting Inc.*, 138 Fed. Appx. 62, 70 (10th Cir. 2005).   Thus, Plaintiff's WPA claim must derive from a common nucleus of operative fact in order for this Court to have jurisdiction to hear that claim under §1367.   *Wilhelm v. TLC Lawn Care, Inc*.  2008 WL 640733, 1 (D.Kan., 2008).

Pursuant to her state statutory claim under the WPA, Plaintiff specifically alleges she was retaliated against by Defendants for (1) failing to provide Mayor Bridges with a key to NASA property; (2) filing a police report and charge of discrimination with the Equal Employment Opportunity Commission regarding Defendant Bridges' alleged assault and battery on her; and (3) reporting a Village employee was "possibly" using a Village vehicle for personal use.   This claim is completely unconnected to the issue of whether Plaintiff was denied proper

compensation in violation of federal law.  As Defendants phrase it, ". . . one would not expect Plaintiff's compensation claims and a claim based on tussles over workplace keys and the copy machine or impermissible use of a public vehicle to be tried together."  Doc. 8 at 6.   Thus, there is no basis for supplemental jurisdiction under § 1367(a) because this state claim does not form part of the same case or controversy as defined by Tenth Circuit law.

In an attempt to cure this oversight and make a connection between the WPA claim and her federal claim, Plaintiff attaches her affidavit to the response in which she contends that she was terminated in retaliation for vocalizing her opposition to Ft. Sumner's alleged FLSA violation.  Ex. 1, ¶¶ 1 & 11.   Defendant urges the Court to ignore Plaintiff's attempt to rehabilitate the complaint by coming up with new allegations in the response brief, and instead base its decision on the face of the allegations in the complaint.  It turns out that Plaintiff's attempts make little difference, since the new allegations do not necessarily bring this state statutory claim within the Court's supplemental jurisdiction.  Plaintiff's claim under the WPA alleging retaliation for having *complained* about not receiving overtime is not concerned with the issue of the number of hours that Plaintiff worked per week, or whether Plaintiff was in fact compensated properly.  The common nucleus of operative facts between Plaintiff's FLSA claim and her WPA claim is based on the existence of an employment relationship between Plaintiff and Defendants, and this is not sufficient to establish a connection between the two claims.  *See, e.g., Wilhelm v. TLC Lawn Care, Inc.,* 2008 WL 640733, 1 (D.Kan. 2008) (citing other jurisdictions rejecting notion that employer-employee relationship creates a common nucleus of operative fact between plaintiff's FLSA claim and peripheral state law claims of breach of fiduciary duty and accounting of profits and civil conspiracy).

16

Even if the WPA claim arose from the same case or controversy, the Court would decline to exercise supplemental jurisdiction over the claim because the WPA is a state anti-retaliation statute, and the Court finds that New Mexico's courts are in a better position to determine whether Plaintiff's allegations constitute retaliation under that statute.  *See, e.g., Gibbs v. Montgomery County Agricultural Society*, 140 F.Supp. 2d 835, 845 & n. 3 & 4 (S.D. Ohio 2001) (, 845 & n.3 & 4 (S.D. Ohio 2001 *Id.* at 845, text & n. 3 &4 ("whether the statement or statements at issue constitute 'threats,' and whether such 'threats,' standing alone, are sufficient to constitute actionable retaliation under [state anti-retaliation statute] are questions that properly may be reserved for Ohio's courts to answer in the first instance.").  Accordingly, pursuant to §1367(c), the Court declines to exercise supplemental jurisdiction over Plaintiff's WPA claim in Count IV.[7]

B.    Whether Collateral Estoppel Bars Plaintiff's WPA Claim

Having determined that supplemental jurisdiction will not be exercised over this claim, there is no need to address the question of whether Plaintiff had the opportunity to fully and fairly litigate this claim in her appeal of her termination to Judge Mitchell in the Tenth Judicial District Court.

III.   **State Tort Law Claims--New Mexico Tort Claims Act (Counts V –VIII).**

In Counts I, VI, VII and VIII, Plaintiff alleges claims of assault, battery, intentional infliction of emotional distress ("IIED") and prima facie tort, against Defendant Bridges.

Defendants present two arguments to support their motion for dismissal of these claims.

---

[7]   Defendants do not seek dismissal of Plaintiff's breach of contract claim in this motion, and so the Court need not decide whether it would exercise supplemental jurisdiction over the breach of contract claim.  *Cmp., Gibbs,* 140 F.Supp. at 845 (court exercised supplemental jurisdiction of Plaintiff's state law overtime compensation claim which was identical to the FLSA claim, but declined jurisdiction over state law retaliation claim under Ohio anti-retaliation provision which governs overtime pay because it raised issues that the court did not address in its analysis of the FLSA claim).

First, they argue that Defendant Bridges is immune from suit because there is no applicable

waiver of immunity contained in the Tort Claims Act for the alleged claims.  In addition,

Defendants argue that the Court should decline to exercise supplemental jurisdiction over these

claim because they are not part of the same "case or controversy" under Article III which would

allow the Court to exercise jurisdiction over these claims pursuant to 28 U.S.C. § 1367.   Either

argument entitles Defendants to dismissal of these claims.

A.      <u>No Waiver of Immunity</u>

Potential tort liability of a governmental entity and its employees is limited by the New

Mexico Tort claims Act ("Tort Claims Act").  *Pemberton v. Cordova*, 105 N.M. 476, 477

(Ct.App. 1987).  The Tort Claims Act provides governmental entities and public employees with

immunity from tort suits unless there is a specific waiver of that immunity set forth under the

Act.  *Weinstein v. City of Santa Fe*, 121 N.M. 646, 649 (1996).  Any provision purporting to

waive governmental immunity must be strictly construed.  *Armijo v. Dept of Health &*

*Environment*, 108 N.M. 616 (Ct.App. 1989).   These waivers apply to torts of employees who are

acting within the "scope of duties" which is defined as those duties which "a public employee is

requested, required or authorized to perform by the governmental entity, regardless of the time

and place of performance."  N.M.Stat.Ann. § 41-4-3(G); *Quezada v. County of Bernalillo*, 944

F.2d 710, 720 (10th Cir. 1991).

Plaintiff's only argument in response is that the Tort Claims Act does not apply to these

claims because Defendant Bridges was not acting within the scope of his duties as mayor.  This

argument is quickly rejected.   The fact that Defendant Bridges' actions were intentional does not

preclude those acts from being carried out within the scope of duty.  *See Seeds v. Lucero*,  137

N.M. 589  (N.M.App.,2005) (noting that New Mexico's case law establishes that a public

employee may be within the scope of authorized duty even if the employee's acts are fraudulent, intentionally malicious, or even criminal); *Risk Mgmt. Div. v. McBrayer*, 129 N.M. 778 (Ct.App. 2000) (explaining that the Tort Claims Act may require a governmental entity to defend and indemnify its employee even if the employee "acts fraudulently or with actual intentional malice to injure another"); *Celaya v. Hall*, 135 N.M. 115 (2004) ("the Tort Claims Act clearly contemplates including [those] who abuse their officially authorized duties, even to the extent of some tortious and criminal activity.").  Under New Mexico precedent, Mayor Bridges' wrongful motive is irrelevant, as long as there is "a connection between the public employee's actions at the time of the incident and the duties the public employee was requested, required or authorized to perform."  *Seeds v. Lucero*, 137 N.M. at 592.   In this case, Defendant Bridges was acting within the scope of his duties as Plaintiff's employer when, as Plaintiff alleges, Mayor Bridges assaulted and battered her with a copy machine cover when she tried preventing him from using NASA equipment for Village purposes during the March 31, 2011 meeting.[8]

Thus, if Plaintiff wishes to sue Defendant Bridges, she must identify a specific waiver of immunity which allows her to do so.   Plaintiff has not done so.  While the Tort Claims Act contains a waiver of immunity under §41-4-12 for assault and battery, it is applicable only to law enforcement officers, and thus does not offer a waiver of immunity here.  There is no waiver for IIED or prima facie tort anywhere in the Tort Claims Act.   *See Silva v. Town of Springer, et al.,* 121 .M. 428, 435 (Ct.App. 1996) (prima facie tort claim and IIED claims summarily dismissed where plaintiff failed to show that the acts of defendants within a recognized exception to the immunity granted to public officers under the Tort Claims Act); *Romero v. Otero et al.,* 678

---

[8]   The general rule is that sexual harassment by a supervisor is not conduct within the scope of employment.  *Ocana v. American Furniture Co.,* 135 N.M. at 552 (2004).  However, Plaintiff is not asserting a sexual harassment claim against Defendant Bridges in this lawsuit, but is basing her claims of assault, battery, IIED and prima facie tort on Defendant's allegedly slamming Plaintiff's a copy machine cover on Plaintiff's arm and hand on March 31, 2011.

F.Supp. 1535, 1540 (D.N.M. 1987).   Accordingly, Counts IV through VIII are dismissed for

failure to state a claim under Rule 12(b)(6).

B.      Supplemental Jurisdiction

        Defendants also contend that the state tort law claims should be dismissed because they

are unrelated to the claims in this lawsuit over which this Court has original jurisdiction.  Based

on the Court's analysis above bearing on the "case or controversy" requirements for

supplemental jurisdiction under 28 U.S.C. § 1367, it should be clear that there is no relationship

between Plaintiff's FLSA claim of entitlement to overtime pay and any of the alleged state tort

law claims of assault, battery IIED and prima facie tort, as none of these claims are connected to

the same operative facts as Plaintiff's FLSA claim.   Thus, the Court alternatively concludes that

Article III bars supplemental jurisdiction over Plaintiff's state tort law claims, and for the

foregoing reasons, Defendants are entitled to dismissal of Counts V through VIII.

        **THEREFORE,**

        **IT IS HEREBY ORDERED** as follows:

- *Count III:*  The Court's ruling on Plaintiff's Equal Protection claim is DEFERRED pending Plaintiff's filing of an amended complaint containing clarification of a basis for this claim only.   Plaintiff shall file an amended complaint with this sole amendment **on or before Monday, June 3, 2013**[9];

- *Counts V through VIII:* The Court GRANTS Defendants' motion under Rule 12(b)(6) regarding Plaintiff's state tort law claims of assault, battery, IIED and prima facie tort, for failure to identify specific waivers of immunity for those claims asserted against Defendant Bridges.  Alternatively, the Court does not have supplemental jurisdiction over these claims for reasons described above in this Memorandum Opinion and Order;

- *Count IV:* The Court GRANTS Defendants' motion under Rule 12(b)(6)  on Plaintiff's claim brought under New Mexico's Whistleblower Protection Act, NMSA 1978, 10-16C-1.   The Court does not have jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a).

---

[9]   Failure of Plaintiff to amend the complaint may result in dismissal of this claim on a motion by Defendants. Plaintiff's counsel  is advised to heed the Court's warning set forth in this Order regarding any other amendments in the revised complaint without formal request and permission of the Court.

Alternatively, the Court would decline to exercise jurisdiction over the claim under §1367(c) for reasons set forth in this Memorandum Opinion and Order.

The remaining claims in this case are Plaintiff's FLSA claim in Count I, the breach of contract claim in Count II, and the Equal Protection claim in Count III, on which the Court has deferred ruling.

_____

UNITED STATES DISTRICT JUDGE